IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

YARIMA GONZALEZ CRESPO
IN REPRESENTATION OF ALBETO PIERRE

        **Petitioner,**

        **v.**

**REBECCA GONZÁLEZ RAMOS, Special Agent in Charge of Homeland Security Investigations in San Juan; CALEB VITELLO, Senior Official Performing the Duties of the Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; and PAMELA BONDI, United States Attorney General,** *in their official capacities,*

        **Respondents.**

**No.**

**PETITION FOR A WRIT OF HABEAS CORPUS**

## PETITION FOR WRIT OF HABEAS CORPUS

### I.      INTRODUCTION

This is an emergency petition for a writ of habeas corpus filed on behalf of Albeto Pierre, seeking relief to remedy his unlawful detention and imminent transfer to a different jurisdiction. On December 24, 2025, Respondents unlawfully detained Petitioner, father of a one-year-old U.S. citizen child, and consensual partner of Marine Nunez Rosario, a green card holder, who is pregnant, currently in her second trimester. (Exhibit C) Mr. Pierre have fully cooperated with immigration authorities since he first arrived in the United States. His detention took place in the community of Barrio Obrero, San Juan, Puerto Rico, while accompanying Marine to her pre-scheduled pre-natal medical appointment. To date, Petitioner is detained without a valid legal basis, facing imminent removal from the jurisdiction of the Commonwealth of Puerto Rico.

Mr. Pierre is not a flight risk or danger to the community. Prior to his detention, he had a pending Temporary Protected Status application filed, was in full compliance with immigration laws, and had

committed no crimes. His detention is the culmination of a pattern of punitive actions by ICE, which began when agents arrested Mr. Pierre in Barrio Obrero, while driving his partner to a medical appointment.

Petitioner submits that his detention is a violation of his constitutional rights to due process and family integrity. His detention is no longer justified under the Constitution and Immigration and Nationality Act (INA). The INA clearly states the conditions under which a non-citizen should be subjected to mandatory detention, none of which applies to Mr. Pierre's case. Mr. Pierre lawfully applied for a Temporary Protected Status, following the process prescribed by law. (Exhibit B) Detaining him now serves no legitimate purpose. It is a waste of government resources and inflicts an unbearable emotional and psychological burden on his family, who have been traumatically separated from him. Petitioner seeks an order from this Court declaring his continued detention unlawful and ordering his immediate release.

## II.    CUSTODY

On December 24, 2025 (Christmas Eve), Petitioner was arrested by ICE agents near the medical clinic of Health Pro-Med, at 2020 Ave. Borinquen, Bo. Obrero, Santurce, PR. Mr. Pierre is currently in the physical custody of Respondents at a federal center operated by General Services Administration (GSA) nicknamed "la neverita" (the icebox), in Guaynabo, PR, located within this judicial district, under the direct control of Respondents and their agents.

## III.    JURISDICTION AND VENUE

This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et. seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570.  This Court has jurisdiction under 28 U.S.C. 2241, art. I, § 9, cl. 2 of the United States Constitution ("Suspension Clause") and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of authority of the United States and such custody is in violation of the U.S. Constitution, laws, or treaties of the United

2

States.   This Court may grant relief pursuant to 28 U.S.C. § 2241, and the All Writs Act, 28 U.S.C. § 1651.

Venue is proper because Petitioner is detained at Guaynabo, city of Puerto Rico which is within the jurisdiction of this District. In addition, Venue is proper in this District because Respondents are officers, employees, or agencies of Puerto Rico and of the United States. Moreover, the District of Puerto Rico is the judicial district in which events giving rise to his unlawful detention occurred. 28 U.S.C. § 1391(e).

## IV.    PARTIES

Albeto Pierre, a national of Haiti, entered United States sometime in 2018, and is currently being detained by Respondents in Puerto Rico.  Yarima González is his immigration attorney who had tried to avoid Petitioner removal from Puerto Rico without success. See Exhibit A.

Respondent Rebecca González Ramos is the Special Agent in Charge of Homeland Security Investigations in San Juan, Puerto Rico. She performs duties in connection with the enforcement of immigration laws and has supervisory authority over operations in Puerto Rico. Accordingly, she is the legal custodian of Petitioner and is named in her official capacity.

Respondent Caleb Vitello is the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement (ICE). He is responsible for the overall administration of ICE, including detention decisions and enforcement of immigration law. He is a legal custodian of Petitioner and is named in his official capacity.

Respondent Kristi Noem is the Secretary of the United Stated Department of Homeland Security (DHS). As head of DHS, she has ultimate authority over ICE and its detention operations. She is a legal custodian of Petitioner and is named in her official capacity.

Respondent Pamela Bondi is the Attorney General of the United States and the head of the Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

3

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

No administrative remedy can provide the immediate relief necessary to prevent the irreparable harm of family separation and the violation of their constitutional rights. The constitutional violations are ongoing, and the thread of transfer is imminent. *Habeas corpus* is their sole and proper judicial remedy.

## VI.    STATEMENT OF FACTS

Mr. Albeto Pierre entered the United States in 2018. (Exhibit B) Mr. Pierre is a 28-year-old citizen and national of Haiti, who has been living in Puerto Rico since 2022. He is the father of a one-year-old U.S. citizen who was born in Puerto Rico. His consensual partner is Marine Nunez Rosario, a Green Card holder, who is six months pregnant with their second child. She suffers from high blood pressure, for which she needs close medical attention. Due to her delicate medical condition, Mr. Pierre regularly accompanies Ms. Nunez to all pre-natal medical appointments.  Mr. Pierre is the sole bread winner of his family. He is well respected in his community and holds no criminal record in his country or in the U.S.

On December 24, 2025 (Christmas Eve), Petitioner was arrested by ICE agents near the medical clinic of Health Pro-Med, at 2020 Ave. Borinquen, Bo. Obrero, Santurce, P.R. At the time of his arrest, he was accompanying Ms. Nunez to a pre-scheduled pre-natal appointment. Mr. Pierre dropped her in front of the medical clinic and was arrested right after he parked his car near the medical facility. He was immediately taken to the Enforcement and Removal Operations (ERO) Office in Guaynabo, a city of Puerto Rico, where he was processed. After that, he was transferred to "la neverita", where he is being detained to this date.

Since there is no immigration detention center in Puerto Rico, Mr. Pierre will most likely be transferred to another jurisdiction within the next 48 hours. His detention and transfer serves no legitimate government interest. Respondents' decision is arbitrary and capricious, and there is no better time for this Court to consider the merits of Petitioner's request for release.

4

### VII.    Deplorable Conditions Across ICE's Detention Centers

While Respondents have not disclosed the specific facility where they intend to detain Petitioner, a nationwide pattern of dangerous and inhumane conditions exists across the network of detention centers operated by or for U.S. Immigration and Customs Enforcement (ICE). This pattern has been extensively documented by human rights organizations and investigative journalists, and is reflected in the desperate account of those trapped inside.[1] The systemic failures consistently documented across the ICE detention system render any placement into ICE custody an immediate threat to a detainee's life, health, and constitutional rights.

The ICE detention system is critically operating at maximum capacity, holding tens of thousands more individuals than it was designed for.[2] This has led to reports of detainees being held for days in temporary "hold rooms" in violation of ICE's own policies, forced to sleep on bare concrete floors or with cardboard boxes as mattresses.[3] In some facilities, individuals are confined in chain-link cages and subjected to sensory deprivation, unable to see daylight or know the time of day, enduring torturous like conditions.[4]

Across facilities in multiple states, detainees have reported chronic hunger, food shortages, and being served spoiled or inedible food, leading to sickness and weight loss.[5] These conditions are compounded by a lack of basic hygiene, with some detained going a week or more without access to showers.[6]

---

[1] John Holmes, *"You Feel Like Your Life is Over"*, Human Rights Watch (July 21, 2025), https://www.hrw.org/report/2025/07/21/you-feel-like-your-life-is-over/abusive-practices-at-three-florida-immigration.

[2] Miriam Jordan & Jazmine Ulloa, Concerns grow over dire conditions in immigrant detention, The New York Times (July 2, 2025), https://www.nytimes.com/2025/06/28/us/immigrant-detention-conditions.html.

[3] Casey Tolan & Isabelle Chapman, Immigrants spend days in 'miserable' ICE hold rooms, violating longstanding policy, CNN US (September 8, 2025), https://www.cnn.com/2025/09/08/us/detainees-ice-immigrants-hold-rooms.

[4] Peter Charalambous & Laura Romero, 'It's like you're dead alive': Families, advocates allege inhumane conditions at 'Alligator Alcatraz', ABC News (August 14, 2025), https://abcnews.go.com/US/youre-dead-alive-families-advocates-allege-inhumane-conditions/story?id=124645763.

[5] Didi Martinez et al., Immigrants in overcapacity ICE detention say they're hungry, raise food quality concerns, NBC News (July 14, 2025), https://www.nbcnews.com/news/us-news/immigrants-overcapacity-ice-detention-say-hungry-raise-food-quality-co-rcna214193.

[6] *Id.* Note 2

5

There is a well-documented history of inadequate health standards and insufficient medical care within ICE facilities.[7] Detainees with chronic conditions like diabetes and high blood pressure are often denied their necessary medications.[8] In other cases, individuals with fevers and serious infections have been refused treatment.[9] The psychological toll of this neglect, combined with family separation and indefinite confinement, has fueled a mental health crisis, leading to a surge in suicidal ideation and deaths in ICE custody.[10] According to NPR news, "Immigration and Customs Enforcement has recorded its deadliest year since the early 2000s as agency officials push to increase the number of people in its custody."[11] Data shows that by October, 2025, at least 20 people had died under ICE custody.

In addition, immigration rights organizations have denounced a pattern by ICE of disappearing detainees from the online detainee locator system once they have been transferred to a different jurisdiction. This situation not only affects the emotional wellbeing of the detainee and their loved ones but impedes the possibility of continuing adequate legal representation.

Therefore, the act of transferring Petitioners into ICE custody is not a transfer to a neutral holding facility. It is a forced entry into a demonstrably broken and dangerous system where their health, safety, and fundamental human dignity will be at immediate and irreparable risk, regardless of the specific destination.

### VIII.  LEGAL FRAMEWORK

"Freedom from imprisonment—from government custody, detention, or other forms physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects."

---

[7] Akash  Pillai et al., *Health Issues for Immigrants in Detention Centers*, KFF (September 30, 2025), https://www.kff.org/racial-equity-and-health-policy/health-issues-for-immigrants-in-detention-centers/.

[8] *Id.* Note 2.

[9] Jasmine Garsd, *In recorded calls, reports of overcrowding and lack of food at ICE detention centers*, NPR *(June 6, 2025), https://www.npr.org/2025/06/05/nx-s1-5413364/concerns-over-conditions-in-u-s-immigration-detention-were-hearing-the-word-starving.*

[10] Patricia Caro, *Conditions at ICE detention centers are fueling a surge in suicide attempts*, El País (September 22, 2025), https://english.elpais.com/usa/2025-09-22/conditions-at-ice-detention-centers-are-fueling-a-surge-in-suicide-attempts.html.

[11] Ximena Bustillo, "It's the deadliest year for people in ICE custody in decades; next year could be worse", NPR news (October 23, 2025), available at: https://www.npr.org/2025/10/23/nx-s1-5538090/ice-detention-custody-immigration-arrest-enforcement-dhs-trump

6

*Zadvydas v. Davis*, 533 U.S. at 690. The Due Process Clause applies to all persons in the U.S., including noncitizens, "whether their presence here is lawful, unlawful, temporary or permanent". *Id.* at 693. Indefinite detention raises a "serious constitutional problem" and violates the Due Process Clause *Id*. at 689–90.

Accordingly, the Due Process Clause protects Mr. Pierre's liberty, and deprivation of his liberty must be narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest").

**Mr. Pierre was illegally detained and abducted in Puerto Rico. Petitioner will be transferred from a Puerto Rico detention center to the continental United States jeopardizing his constitutional rights.**

Pursuant to the Immigration and Nationality Act (INA), a noncitizen should be subject to mandatory detention under three different circumstances: (a) people with certain criminal convictions (8 USC § 1226(c)); (b) people who are subjected to expedited removal (8 USC § 1225(b)(1)); and, (c) people who have been previously ordered removed from the United States (8 USC § 1231). None of these circumstances are present in Mr. Pierre's case. Moreover, alternatives conditions to detention already exists and are being currently used by ICE that are least restrictive, such as ancle monitor or the digital face recognition monitor systems. Recently, in Maldonado Bautista et. al., a case from the Central District Court of California, certified a class of immigration detainees who are eligible for bond, which include all noncitizens without lawful status who: (1) have entered without inspection; (2) were not apprehended upon arrival; and, (3) are not subject to mandatory detention, as defined in 8 USC § 1226(c), § 1225(b)(1), and §1231. *Lazaro Maldonado Bautista et al v. Ernesto Santacruz Jr et al*, (C.D. of California, Case No. :25-cv-01873-SSS-BFM)

## IX.   CLAIMS FOR RELIEF

## COUNT ONE

## CONSTITUTIONAL CLAIM

### Violation of the Due Process Clause
### of the Fifth Amendment to the U.S. Constitution

Petitioner alleges and incorporates by reference all preceding paragraphs.

Mr. Pierre detention violates his right to substantive and procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution.

Petitioner's detention and the lack of adequate judicial review violate the Suspension Clause of the U.S. Constitution, which guarantees the right to *habeas corpus* unless formally suspended by Congress.

The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause Protects. *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Civil immigration detention violates due process if it is not reasonably related to its statutory purpose. *See id*. at 690 (citing *Jackson v. Indiana*, 506 U.S. 715, 738 (1972)). Prolonged civil detention also violates due process unless it is accompanied by strong procedural protections to guard against the erroneous deprivation of liberty. *Id.* at 690–91. ICE has provided Mr. Pierre with no procedural protection to guard him against the deprivation of his liberty. Thus, petitioner's detention violates both substantive and procedural due process.

## COUNT TWO

### Violation of the Fifth Amendment: Access to Counsel

Petitioner alleges and incorporates by reference all preceding paragraphs.

Individuals detained in immigration operations have a right to counsel rooted in the Due Process Clause of the Fifth Amendment. See *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990).

8

The government cannot impose restrictions on access to attorneys that undermine the opportunity to obtain or communicate with retained counsel.

Upon information and belief, Respondents have a policy, pattern, and practice at the detention facilities of impeding detainees' access to legal counsel. These impediments include, but are not limited to, turning away attorneys, failing to provide a means for confidential legal consultations by phone, creating other unreasonable barriers to communication and even failing to provide proper documentation, like the Notice to Appear (NTA) in a timely manner. This lack of access to counsel has severe consequences, forcing Petitioners to interact with federal immigration officials and navigate critical stages of their detention without the benefit of legal advice. Navigating the immigration system "without an attorney is a Herculean task." *Usubakunov v. Garland*, 16 F.4th 1299, 1300 (9th Cir. 2021).

In Puerto Rico this effect is exacerbated when noncitizens are moved to a different jurisdiction. Due to its geographical isolation, local counsel attempting to represent clients face physical burdens absent in mainland United States, where access might be achieved by train or car. Instead, attorneys must frequently incur significant expense and time for air travel to reach their detained clients, in addition to the time spent locating the client and determining which detention center they've been transferred to. This fundamental constraint severely compromises the ability of Petitioners to obtain or communicate with counsel, especially when they are transferred out of district. This geographical constraint, when combined with institutional restrictions, makes the denial of the constitutional right to counsel particularly acute, heightening the already "Herculean task" described by the Ninth Circuit. Respondents' actions create an unconstitutional obstruction of Petitioners established right to counsel in violation of the Fifth Amendment.

## COUNT THREE

### Violation of the Fifth Amendment:
### Conditions of Confinement

Petitioner alleges and incorporates by reference all preceding paragraphs.

The conditions of Petitioners' confinement constitute unconstitutional punishment. As civil

detainees, they have a right to "adequate food, shelter, clothing, and medical care," and their conditions of confinement become unconstitutional if they "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Conditions are punitive when the harm they cause "significantly exceed[s], or [is] independent of, the inherent discomforts of confinement[.]" *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004).

Petitioner is being held in inadequate conditions of detention. "La neverita" is not an immigration detention center, and if transferred, he will most likely be subjected to deplorable conditions that amount to inhumane treatment and torture. These conditions include, but are not limited to, overcrowding, inadequate sleeping accommodations, failure to provide basic necessities like adequate food, water, and hygiene facilities, lack of proper medical care, and could even be subjected to physical abuse and forced labor.

These conditions are not reasonably related to any legitimate governmental objective. Instead, they serve only to punish Petitioner and create a coercive environment designed to pressure him into abandoning his legal rights. Such treatment violates the Fifth Amendment's prohibition on depriving any person of liberty without due process of law.

## COUNT FOUR

### STATUTORY CLAIM UNDER APA

Petitioner alleges and incorporates by reference all preceding paragraphs.

Respondents' decision to detain Petitioner is an agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2).

The decision to detain is arbitrary because it fails to consider crucial factors, including Petitioners' pending applications, his lack of a criminal record, his strong ties to the community, the profound and irreparable harm of separating him from his U.S. citizen children, and the availability of less restrictive alternatives to detention. The decision appears based on impermissible punitive motives rather than a reasonable application of statutory criteria.

10

## COUNT FIVE

If he prevails, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue and immediate Temporary Restraining Order prohibiting Respondents, their agents, and employees from transferring Petitioner out of the District of Puerto Rico pending a ruling on this petition;

3. Issue an order directing Respondents to show cause, on an expedited basis, why the writ of habeas corpus should not be granted;

4. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from their custody. In the alternative, should the Court find that some form of security is required, order Petitioner released upon the posting of a reasonable bond or reasonable conditions of supervision show;

5. Award Petitioners reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412; and,

6. Grant any other relief which this Court deems just and proper.

Respectfully submitted,

*s/ Fermín L. Arraiza-Navas*
#215705 (US District Court Puerto Rico)

Annette Martínez-Orabona
Executive Director
American Civil Liberties Union
Puerto Rico Chapter
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918

(787) 753-9493
(646) 740-3865
[farraiza@aclu.org](mailto:farraiza@aclu.org)*Counsel for Petitioner*

Dated: [December 29, 2025

## VERIFICATION OF COUNSEL

I, Fermin L. Arraiza Navas, hereby certify that I am familiar with the case of the named petitioner and that the facts as stated above are true and correct to the best of my knowledge and belief.

Dated this 29 day of Decemberr, 2025.

*s/ Fermín L. Arraiza-Navas*
Attorney Name